## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| SOUTHWEST ELECTRICAL | § | |
| CONTRACTING SERVICES, LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | No. MO:18-CV-00123-DC |
| | § | |
| INDUSTRIAL ACCESSORIES | § | |
| COMPANY AND ADELPHI | § | |
| CONSTRUCTION, LC, | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case was tried to the bench beginning March 2, 2022. Defendants INDUSTRIAL ACCESSORIES COMPANY ("Industrial Accessories") and ADELPHI CONSTRUCTION, LC ("Adelphi") (collectively, "Defendants" or "IAC") move for judgment on partial findings under Federal Rule 52(c) as to Plaintiff SOUTHWEST ELECTRICAL CONTRACTING SERVICES, LTD.'s ("Plaintiff" or "SWECS") tort claims for negligent misrepresentation and false misrepresentation and quasi-contract claim for quantum meruit. The Court **GRANTS** the motion.

### I.   BACKGROUND

The Court limits its discussion of the background facts and procedural history to what is necessary to understand this decision. On October 8, 2017, and November 1, 2017, SWECS submitted proposals for electrical work for the Preferred Sands of Atascosa, LLC South Texas ("STX") and Preferred Sands of Monahans, LLC West Texas ("WTX") frac sand plants, respectively. The STX sand plant is in Atascosa County, Texas. The WTX sand plant is in Ward County, Texas. Defendant Industrial Accessories contracted with the leasehold owners of

STX and WTX directly or through the leasehold owners' agents for the design, procurement, and building of the frac sand plants. Defendant Industrial Accessories also contracted with Defendant Adelphi to provide construction management services. IAC subcontracted with SWECS to furnish and install electrical work at STX and WTX.

Plaintiff claims Defendants breached the contracts entered by the parties regarding the electrical work performed by Plaintiff at STX and WTX and that Defendants owe Plaintiff a substantial amount of contract or quantum meruit damages. Plaintiff also brings tort claims for negligent misrepresentation or false misrepresentation. Defendants counterclaim that Plaintiff breached the terms and conditions set forth in IAC Master Supplier Terms and Conditions ("T&Cs"), which were attached to each of the purchase orders ("POs"). Defendants also bring counterclaims for indemnity, negligence, and breach of implied warranties.

The bench trial began on March 2, 2022. On March 3, 2022, Defendants moved for judgment on partial findings pursuant to Federal Rule 52(c). Having considered the pleadings of the parties, the evidence, proposed findings of fact and conclusions of law, and arguments of counsel, the Court issues the following partial findings under Federal Rule 52(c). For the reasons set out below, the Court **GRANTS** Defendants' Federal Rule 52(c) motion, and **DISMISSES** Plaintiff's claims against Defendants for quantum meruit, negligent misrepresentation and false misrepresentation.

## II.    APPLICABLE LAW

This state law action is brought pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332(a). Plaintiff is a Texas Limited Partnership that removed this action to this Court as a defendant in state court, and has been realigned as Plaintiff. Defendant Industrial Accessories is a Kansas corporation that initiated this action in state court, and has been realigned as a

Defendant.  Adelphi is a Kansas limited partnership that initiated this action in state court, and has been realigned as a Defendant.  The amount in controversy exceeds the sum of $75,000.00, excluding interest and costs.

Originally filed in state court, Cause No. B-18-06-0662-CV, in the 161st District Court, Ector County, Texas, this action was properly removed to the Midland/Odessa Division of the Western District of Texas.  Venue is proper in this Court under 28 U.S.C. § 1441(a) because the state court where the suit was pending is in this district and division.  The parties agree that venue is proper in this Court.  Pursuant to diversity jurisdiction, Texas law governs the substantive law claims of quantum meruit, negligent misrepresentation, and false misrepresentation. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

The Court now considers Defendants' motion for judgment on partial findings under Federal Rule 52(c).  Federal Rule 52(c) provides:

> **Judgment on Partial Findings**. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

FED. R. CIV. P. 52(c).

"Rule 52(c), unlike Rule 50, does not require the district court 'to draw any inferences in favor of the non-moving party' and permits the court to make a determination 'in accordance with its own view of the evidence.'" *Fairchild v. All Am. Check Cashing, Inc*., 815 F.3d 959, 963 n.1 (5th Cir. 2016) (internal citations omitted).  The Court satisfies the requirement of Federal Rule 52(c) by supporting its ruling through findings of fact and conclusions of law as presented in this memorandum opinion and order.  It is concluding for the forthcoming reasons

that Plaintiff, having been fully heard on its case in chief, cannot recover on quantum meruit, negligent misrepresentation, or false misrepresentation under the controlling law.

### III.   BACKGROUND FACTS

Industrial Accessories is an Engineering, Procurement, and Construction ("EPC") contractor with specialization in the design and construction of industrial projects, such as steel, cement, plastic, frac sand, and ethanol plants. Adelphi is a wholly owned subsidiary of Industrial Accessories and performs construction functions on Industrial Accessories' industrial projects. Preferred Sands, operating in Texas through Sand Mining of Texas, LLC and Letterykenny Ranch, LLC ("Preferred Sands"), is a frac sand mining company. SWECS is a full-service electrical contractor.

### A.   Contracts Between the Parties

In 2017, Preferred Sands hired IAC as an EPC contractor to build two frac sand facilities in Texas. Each facility contained two plants—a wet plant and a dry plant. Preferred Sands located one facility in Poteet, Texas, and another in Monahans, Texas. In October 2017, IAC and SWECS negotiated and entered into two contracts for SWECS to perform electrical subcontract work at the STX wet plant and the STX dry plant. In November 2017, IAC and SWECS negotiated and entered into two contracts for SWECS to perform electrical subcontract work at the WTX wet plant and the WTX dry plant.

The STX and WTX projects were design-build. IAC was responsible for providing updated designs to subcontractors, including SWECS. IAC approved the SWECS proposals and issued two base scope purchase orders per facility, one each for a dry plant and a wet plant. The original four purchase orders were fixed-cost contracts and shall collectively be referred to as the Base Work Purchase Orders. Each Base Work Purchase Order states that "SWECS shall have no

recourse to IAC, excepting if an approved scope of work change shall occur."   SWECS performed electrical work at the STX and WTX facilities between October 2017 through summer 2018.

During this time, Preferred Sands added additional scopes of work to the underlying STX and WTX projects—either changes to the Base Work Purchase Orders or entirely new work. IAC, in turn, asked SWECS to bid on this additional work.   In response, SWECS issued either a written change proposal or a bid for new scopes of work.   IAC then accepted by issuing either a change order to an existing purchase order or a unique purchase order for the respective scope of work.   All additional work was agreed to in writing, and SWECS billed IAC on both a fixed-cost basis and on a time and materials ("T&M") basis.

For the STX wet plant, IAC and SWECS entered into 14 contracts totaling $2,310,412.10, which IAC paid to SWECS.   For the STX dry plant, IAC and SWECS entered into 26 contracts totaling $3,827,079.65, which IAC paid to SWECS.   For the WTX wet plant, IAC and SWECS entered into 14 contracts totaling $2,198,012.89, which IAC paid to SWECS. For the WTX dry plant, IAC and SWECS entered into 28 contracts totaling $4,732,560.99, which IAC paid to SWECS.

SWECS performed the work at the STX and WTX facilities pursuant to these 82 above-described contracts between SWECS and IAC.   SWECS and IAC agreed in each purchase order contract to written T&C which were to govern the work performed pursuant to the contracts:

    (a) <u>General Application</u>. Unless otherwise expressly agreed to in writing by both parties, these terms and conditions shall apply to all transactions between Industrial Accessories Company, Inc. ("IAC") and Supplier regarding the purchase and sale of products, goods and services manufactured or produced by Supplier (the "Products"). Without limiting the generality of the foregoing, the terms and conditions set forth herein shall apply to the Purchase Order and other documents of purchase (collectively, the "Purchase Order(s)") which IAC may place with Supplier for Products after the date of the Purchase Order; and

all order acknowledgments ("Order Acknowledgments") and other documents issued by Supplier to IAC after the date of the Purchase Order with respect to the purchase of Products. These terms and conditions shall apply to all Purchase Orders and Order Acknowledgments and other documents of Supplier; regardless of whether or not these terms and conditions are expressly referenced in such Purchase Order or an Order Acknowledgment and other documents issued by Supplier.

(b) <u>Additional and/or inconsistent Terms</u>. Unless otherwise expressly agreed to in writing by both parties, no inconsistent or additional term or condition in any document delivered by Supplier shall be applicable to a transaction between IAC and Supplier, unless the terms are additional terms and are expressly accepted in writing by IAC.

(c) <u>Changes in Specifications or Delivery</u>. IAC reserves the right at any time to make changes in any drawings, descriptions, specifications, and delivery dates as to Products covered by the Purchase Order. Any difference in price or time for performance resulting therefrom shall be equitably adjusted and the Purchase Order schedule shall be modified in writing accordingly.

(d) <u>Prices and Taxes</u>. IAC shall not be billed for any Products or services at prices higher than those stated in the Purchase Order. . . .

(e) <u>Insurance and Indemnifications</u>. Supplier shall indemnify, defend (using counsel acceptable to IAC) and hold harmless IAC, its successors, assigns, agents, and customers, and users of goods or services covered by the Purchase Order ("indemnitees") from and against all claims, damages, losses and expenses, including attorneys' fees (collectively, the "Losses"), arising out of Supplier's provision of the Products or services furnished under the Purchase Order, including, without limitation, any Losses that IAC, its successors, assigns, agents and/or Customers may incur which arise out of . . . a breach by Supplier of any of its representations, warranties, agreements and/or covenants contained herein. . . . This indemnification shall apply whether Supplier or IAC defends such suit or claims and whether the Losses are caused by the sole or concurrent negligence of Supplier.

(f) <u>Payments</u>. Except to the extent otherwise agreed to by the parties, IAC shall pay invoiced amounts within sixty (60) days of the date Supplier's correct invoice is received by IAC, provided that Products have been received and accepted by IAC or its Customer as contemplated herein.

IAC shall have the right to offset against any payments owed by it to Supplier, any amounts that Supplier may owe to IAC . . . .

(g) <u>General Provisions</u>. All terms and conditions set forth in this Article shall be applicable if the Purchase Order is placed electronically with Supplier by IAC.

(h) <u>Entire Agreement</u>. The Purchase Order and these terms and conditions contains the entire understanding of the parties with respect to its subject matter, and supersedes all prior and contemporaneous agreements, understandings and negotiations. No parol evidence of prior or contemporaneous agreements, understandings or negotiations shall govern or be used to construe or modify the Purchase Order. No modification or alteration of the Purchase Order or these terms and conditions shall be deemed effective unless in writing and signed by the parties.

Plaintiff's Exhibit No. 1.

The T&Cs contain express provisions stating that the terms of the written POs would govern the parties, and that the terms of the written POs shall not be amended absent the written agreement of IAC. After SWECS performed the work contemplated in each contract with IAC, it would either issue an Application and Certificate For Payment or an invoice to IAC. As to the Base Work Purchase Orders, SWECS issued multiple Applications and Certificates For Payment signed by SWECS's general manager, Joe Davis, before a notary public, expressly stating that "all amounts have been paid by the Contractor for work for which previous Certificates for Payment were issued[.]" The final Application and Certificate For Payment tendered for each of the Base Work Purchase Orders, and reflected a zero balance.

**B.      Procedural History**

IAC filed suit against SWECS on June 7, 2018, in the 161st Judicial District Court for Ector County, Texas. SWECS removed this action to the United States District Court for the Western District of Texas, Midland/Odessa Division on July 13, 2018. SWECS filed an Unopposed Motion to Realign Parties (Doc. 18) asserting that SWECS should have the burden to prove up its delay claims against IAC and Adelphi first before IAC prosecutes its claims under the express provisions of the contract.

SWECS filed its First Amended Complaint on May 13, 2019 (Doc. 19), joining Preferred Sands of Monahans, LLC, Preferred Sands of Atascosa, LLC, and Signal Peak Silica, LLC ("Preferred Sands Defendants") as defendants and seeking to foreclose and collect on certain mineral, mechanic's and materialman's liens filed related to the STX and WTX facilities. SWECS stipulated to a settlement with the Preferred Sands Defendants and moved this Court to dismiss the Preferred Sands Defendants, which the Court granted. (Docs. 30, 31).

SWECS brought claims for breach of contract, negligent misrepresentation, false misrepresentation, and quantum meruit. IAC filed an unsuccessful motion for summary judgment. At the conclusion of Plaintiff's case in chief during this bench trial, Defendants moved for judgment on partial findings under Federal Rule 52(c).

## IV.   PARTIAL FINDINGS UNDER FEDERAL RULE 52(C)

The best agreements are those which invite perspectives of meticulousness; the most precarious, of ambivalence. Occasionally, it takes more time and materials to perform than anticipated, sometimes less. This dispute falls into the former category. A subcontractor providing electrical services had to perform additional work than originally expected. The question currently before the Court is whether the subcontractor is entitled to additional monies outside the contracts for the extra electrical work or whether it is stuck with the agreement of the parties.

### A.   Partial Findings of Fact

SWECS claims that IAC did not adequately compensate it for the work SWECS performed. The parties anticipated at the time they entered into the Base Work Purchase Orders that Preferred Sands would likely add additional work to the project, including changes to the Base Work Purchase Orders and entirely new scope work. As anticipated when the parties

entered into the Base Work Purchase Orders, Preferred Sands made changes to the project design during construction. These changes impacted SWECS's electrical work, changing the base scope of work and adding new work.

In response to each change in the scope of the base scope work, SWECS prepared a written proposal either increasing or decreasing the cost of labor and materials. Once SWECS submitted a proposal to adjust the Base Work Purchase Orders, IAC accepted SWECS's proposal and issued a written change order for SWECS to perform the changed work at the price contained in SWECS's proposal. During construction, Preferred Sands also engaged IAC to perform new or additional electrical work in connection with the STX and WTX projects. In turn, IAC gave SWECS the opportunity to bid to perform this additional work. None of this work was contemplated or identified in the Base Work Purchase Orders. SWECS and IAC refer to these new contracts as "new work contracts" or "new work purchase orders." Between the Base Work Purchase Orders, change orders, and new work purchase orders, IAC and SWECS entered into over 90 contracts for the STX and WTX projects. Each contract was comprised of a bid made by SWECS to perform work at a price, followed by IAC issuing a purchase order accepting the bid, setting a price for the project in the amount of the SWECS's bid, and incorporating IAC's Master T&Cs as part of the contract. Prior to starting work on the STX and WTX projects, SWECS agreed in writing that IAC's Master T&Cs would apply to all work performed by SWECS for IAC.

SWECS performed its labor at the STX and WTX projects pursuant to the terms of these contracts. Specifically, each contract contemplated that changes to the scope of work and as well as delays may occur during the course of the project, and provided remedies if such a change occurred. For example, if IAC made a change that caused a delay or difference in price, the

parties agreed for SWECS's exclusive remedy to be a written, equitable adjustment to the purchase price and schedule as follows:

> Change in Specifications or Delivery.  IAC
> reserves the right at any time to make changes in
> any drawings, descriptions, specifications, and
> delivery dates as to Products covered by the
> Purchase Order.  Any difference in price or time
> for performance resulting therefrom shall be
> equitably adjusted and the Purchase Order
> schedule shall be modified in writing
> accordingly.

Plaintiff's Exhibit No. 1.

The Court FINDS that a series of discrete contracts govern the relationship between SWECS and IAC, and therefore, SWECS cannot recover on its non-contractual causes of action including quantum meruit, false representation, and negligent misrepresentation.  SWECS is bound by the express terms of the parties' contracts.

**B.      Conclusions of Law**

This case largely turns on legal issues of contract interpretation.  One of those questions of law is whether Plaintiff can recover beyond the parties' contracts.  The Court concludes that Plaintiff can only recover under a contract theory.  Of course, a valid modification of the contracts via a change order could render Defendants liable.  But change orders, like any modification, must satisfy the normal requirements of a contract: "a meeting of the minds supported by consideration."  *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986); *Dall./Ft. Worth Int'l Airport Bd. v. INET Airport Sys., Inc.*, 819 F.3d 245, 252 (5th Cir. 2016) (concluding that contractor did not assume all risks when the contract contained no provision on point and a mixture of provisions allocating risks of defects to both parties, explaining "any

change order to adjust for the defects discovered by INET required the assent of both parties"). Importantly, "[a] promise to fulfill a pre-existing obligation cannot serve as new consideration for an amendment to a contract." *In re OSG Ship Mgmt*., 514 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The evidence before the Court demonstrates that Plaintiff was obligated under approximately 90 written contracts to perform electrical work, or extra electrical work outside the original Base Work Purchase Orders, without any compensation beyond the prices and remedies listed in the written contracts. Performing electrical work and extra electrical work that Plaintiff was already obligated to perform under the written contracts cannot serve as the basis for a tort or quasi-contract theory of recovery. The relevant contracts required Plaintiff to perform all of the electrical work described, regardless of how much it turned out to be.

### 1. Quantum Meruit

Quantum meruit is only available if the extra electrical work performed by Plaintiff was not covered by the contracts. *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976) (recognizing that contractor could recover quantum meruit "for the reasonable value of services rendered and accepted which are not covered by the contract"), *overruled on other grounds by Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex. 1989). "Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). It is generally unavailable if a valid contract covers the goods or services a plaintiff furnished. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740 (Tex. 2005).

While quantum meruit corrects an injustice when a promise to pay is implied, here, IAC's promise to pay SWECS for its electrical work was expressly provided for in the subject

contracts. Because the parties had an express agreement allocating payments, services, and risks—that is, a contract—the Court will not interject its view of what would constitute an equitable arrangement. Thus, quantum meruit does not fit in this case. SWECS seeks a quantum meruit theory of recovery despite having substantially performed its contractual duties and, therefore, being able to collect on the contracts.[1] In other words, SWECS wants to recover the contract price in addition to quantum meruit. Such a result is not allowed. *See Balfour Beatty Rail, Inc. v. Kan. City S. Ry. Co*., 173 F. Supp. 3d 363, 451 (N.D. Tex. 2016) (denying quantum meruit when the work was within the scope of the contract); *Bright Excavation, Inc. v. Pogue Constr. Co*., 2020 WL 1921681, at *7 (Tex. App.—Dallas Apr. 21, 2020, no pet.) (same). Allowing SWECS to recover more than the contract price for work the contract required would effectively override the parties' agreement. *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.,* 246 S.W.3d 42, 50 (Tex. 2008) ("[W]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.") (quoting *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000)).

The Court FINDS Plaintiff seeks to recover for injuries it allegedly incurred by performing electrical subcontract work at the WTX and STX projects pursuant to its bid and the

---

[1] Generally, quantum meruit is unavailable if there is a valid contract covering the goods or services furnished. In Texas, there is an exception to this general rule in the construction context. A plaintiff that does not substantially perform a construction contract, and thus cannot "recover[] under the express contract," may pursue quantum meruit for the value of its services. *See Murray v. Crest Constr., Inc*., 900 S.W.2d 342, 345 (Tex. 1995). Unlike the goods or services provided under many contracts, partial work done on a construction project cannot be transferred to another buyer. Thus, it would be unjust to allow the party receiving the partial construction to not pay anything for it. *See Vortt Expl. Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990) (noting that "quantum meruit is founded on unjust enrichment"). As a result, when a breaching contractor cannot recover the contract price, it nonetheless may be able to recover in quantum meruit. *Murray*, 900 S.W.2d at 345. That "partial performance" exception does not fit this case. Plaintiff seeks a quantum meruit recovery despite having substantially performed its contractual duties and, therefore, being able to collect on the contract. Here, all parties agree the contracts are valid and enforceable and no party seeks to cancel the contracts for want of performance.

resulting purchase orders.  The Court FINDS Plaintiff performed all electrical work pursuant to the contracts.  The Court FINDS the source of the parties' relationship is the relevant contracts.

The Court FINDS that Plaintiff cannot recover in quantum meruit because the work Plaintiff performed was within, not outside of, the relevant contracts.  The Court FINDS that the unanticipated electrical work was SWECS's responsibility under the subject contracts, and therefore, quantum meruit is not an appropriate vehicle for recovering the contract price.  The Court FINDS that quantum meruit does not allow SWECS to recover for the additional electrical work performed outside the scope of the original Base Work Purchase Orders.

The Court FINDS the evidence is **INSUFFICIENT** to support a conclusion that Defendants are liable for quantum meruit.

### 2.     Negligent and False Misrepresentation

The Court has emphasized the sanctity of the agreements reached by the parties in rejecting any remedy beyond the contract price.  Contracts govern the work SWECS performed at STX and WTX.  SWECS pleads IAC breached these contracts and that IAC's breach caused damage to SWECS.  Plaintiff also pleads two causes of action in tort: negligent misrepresentation and false misrepresentation.  Following the close of Plaintiff's case in chief at the bench trial and Defendants' motion for judgment under Federal Rule 52(c), Plaintiff withdrew its negligent misrepresentation and false misrepresentation claims, leaving its quantum meruit claim intact.

### V.     CONCLUSION

For the reasons set out above, the Court HOLDS that SWECS is not entitled to judgment against IAC on its quantum meruit, false misrepresentation, and negligent misrepresentation claims.

It is therefore **ORDERED** that Plaintiff's negligent misrepresentation, false misrepresentation, and quantum meruit claims are hereby **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

SIGNED this 3rd day of March, 2022.

_____
DAVID  COUNTS
UNITED STATES DISTRICT JUDGE

14